# Exhibit 3

# FOIA Request from Southern Environmental Law Center to the USFS on June 20, 2019

# SOUTHERN ENVIRONMENTAL LAW CENTER

Telephone 828-258-2023   48 PATTON AVENUE, SUITE 304   Facsimile 828-258-2024
ASHEVILLE, NC 28801-3321

June 20, 2019

*Via First Class U.S. Mail and Electronic Mail*

FOIA Officer
USDA Forest Service, FOIA Service Center
1400 Independence Ave. SW
Mail Stop: 1143
Washington, DC  20250-1143
WO_FOIA@fs.fed.us

    Re:    Freedom of Information Act Request Regarding the Forest Service's Proposed NEPA Rulemaking, 84 Fed. Reg. 27,544

Dear FOIA Officer,

    Pursuant to 5 U.S.C. 552, please provide the records described below. Except as otherwise indicated, this request is limited to records in the custody of the Washington Office that were sought, submitted, gathered, collected, or assembled in connection with the proposed NEPA rulemaking noticed at 84 Fed. Reg. 27,544, whether or not those records were reviewed or relied on by the Forest Service in support of the proposed rulemaking. This request specifically excludes documents that are available on the Forest Service's NEPA revision webpage[1], such as the final EAs and decision documents for selected projects. With the exception of the foregoing express limitation, each category of this request is intended to be read broadly, to the full extent of its terms. The categories requested are as follows:

1. Forest Service procedures and/or criteria, including but not limited to procedures and/or criteria required by 40 C.F.R. 1507.3(b), for the identification of categories of action that do not normally require an environmental assessment or environmental impact statement, and all records of the application of such procedures or criteria to develop the for the new or revised categorical exclusions proposed at 84 Fed. Reg. 27,544 through 27,559.

2. All information relied upon in the development of proposed 220.5(e)(3), (e)(16), (e)(23), (e)(24), (e)(25), (e)(26), and (e)(27).  This includes, but is not limited to, all meeting notes, minutes and summaries of meetings involving professional staff with knowledge of covered activities, relevant extraordinary circumstances, or related BMPs or design criteria.

3. All requests for data (data calls) or other requests for reports, summaries, professional opinions or judgments, or supporting data or explanation, from Forest Service staff, other

---

[1] *See* https://www.fs.fed.us/emc/nepa/revisions/index.shtml and subsequent links.

Charlottesville • Chapel Hill • Atlanta • Asheville • Birmingham • Charleston • Nashville • Richmond • Washington, DC

100% recycled paper

federal or state agencies or their staff, or outside partners or experts, and all responses to those data calls or other requests.

4. All data, summaries, opinions, descriptions, findings, conclusions, analyses, or syntheses related to monitoring or evaluation of prior projects considered in connection with the proposed rulemaking to determine whether their effects were consistent with predictions made in NEPA documents.

5. Scoping, agency and public comments, and decision documents for instances in which previous versions of (e)(3) and (e)(16) were used.

6. All records related to any other agency's categorical exclusions (a) which are similar in substance to a new or revised category proposed in this rulemaking, or (b) which may be relied upon under proposed 220.5(e)(27).

7. The Forest Service's database(s) of projects from which:
    (a) The 718 projects referred to in the Supporting Statement for proposed 36 C.F.R. 220.5(e)(26) or the 68 projects identified in Appendix A to that Supporting Statement were selected; and
    (b) The data were gleaned to develop tables, graphs, summaries, or analyses of the number of decisions made by the Forest Service, the types or locations of those decisions, the common or differentiating characteristics of those decisions, and/or the frequency of appeals, objections, or litigation.
   For purposes of this category, please provide the database(s) in a format that associates all files, data, and metadata with the appropriate project(s).

8. For all projects for which primary documents, data, summary, analysis, evaluation, or synthesis were sought, gathered, or submitted in connection with the development of proposed 36 C.F.R. 220.5(e)(26), including but not limited to the 718 projects referred to in the Supporting Statement for the CE:
    (a) All NEPA documents (including pre-scoping, scoping, draft analysis, final analysis, supplemental analyses, findings of no significant impact, decision notices or memos);
    (b) All documents responding to an administrative appeal or objection or amending a decision, and all supplemental information reports; and
    (c) All other data, summary, analysis, evaluation, or synthesis referring to such projects.

9. For all projects reviewed in the Supporting Statements for proposed infrastructure, special use, and/or restoration categorical exclusions or otherwise reviewed or considered in connection with the proposed rulemaking, all records, including but not limited to any primary documents, data, summary, analysis, evaluation, or synthesis, related to:
    (a) Mitigation commitments included in project proposals and/or decisions;
    (b) Project changes (e.g., dropped or modified activities or mitigation commitments added) between proposal and decision; and

2

      (c) Differences between projects as described in decision documents and projects as implemented.

10. All records summarizing, evaluating, analyzing, grouping, or differentiating projects and/or their effects using any metric, methodology, or criterion (for example, without limitation, acreage, ecosystem or community type, project purpose, suitability of affected lands for timber production or other uses, road mileage, slope or soil type, watershed characteristics, wildlife or plant species affected, road density, presence of extraordinary circumstances, effect on invasive species infestations, or number or substance of public or agency comments received) and all records related to the development or selection of any such metrics, methodologies, or criteria.

11. All records, including but not limited to any database, list, summary, or analysis, related to projects that were proposed but not completed because they were cancelled, abandoned, or otherwise shelved.

12. All records, including but not limited to any database, list, summary, or analysis, related to projects that were analyzed using an environmental impact statement (EIS).

13. All records compiling, summarizing, or analyzing changes to projects that were made in response to scoping comments.

14. All records related to the selection of scientific literature in support of the proposed rulemaking, including scientific literature collected or reviewed but not referenced or relied on in the Supporting Statements for proposed infrastructure, special use, and/or restoration categorical exclusions or their Appendices.

15. All records relied on in the development of the second sentence of proposed 36 C.F.R. 220.5(a), to wit: "All categories are independently established and do not constrain or limit the operation of each other."

16. All records relied on in the development of the third sentence of proposed 36 C.F.R. 220.5(a), to wit: "Multiple categories may be relied upon for a single proposed action when a single category does not cover all aspects of the proposed action."

17. All records relied on in the development of the clause included in proposed 36 C.F.R. 220.5(b)(2) limiting the application of extraordinary circumstances to instances where "the responsible official determines that there is a likelihood of substantial effects," including any records related to the ability of responsible officials to consistently or accurately determine whether effects will be substantial without the benefit of information provided in an environmental assessment or impact statement and vetted by the public.

18. All records relied on in the development of proposed 36 C.F.R. 220.4(i), including but not limited to any records related to the expected use of Determinations of NEPA Adequacy in Forest Service decisionmaking.

3

19. All records relied on in the development of proposed 36 C.F.R. 220.4(k), including any records describing, summarizing, evaluating, or analyzing previous or ongoing projects using condition-based management approaches.

20. All records relied on in the development of proposed 36 C.F.R. 220.7(a)(3), including but not limited to primary documents, data, summaries, evaluations, analyses, or syntheses of previous projects authorizing mining activities;

21. All records related to the variation in the number of projects and/or number of acres treated (total or by project) between regions, forest or grassland units, and/or districts for any time period.

22. All records related to categories of action considered for categorical exclusion, including different versions of the categories proposed for action, but not ultimately included in the proposed rule, along with all records documenting their likely effects and all records documenting the reasons they were not included in the proposed rule.

23. All records related to resource conditions that were considered to be added as "extraordinary circumstances" at proposed 25 C.F.R. 220.5(b)(1), but which ultimately were not included in the proposed rule, along with all records documenting the reasons they were not included in the proposed rule.

24. For the 68 projects listed in Appendix A to the Supporting Statement for the categorical exclusion proposed at 36 C.F.R. 220.5(e)(26), all GIS shapefiles showing the location of stands or areas for which the decision authorized treatment. For purposes of this category only, we are seeking records in the custody of any office of the Forest Service, including the Washington Office, Regional Offices, Forests or Grassland Unit Offices, or District Offices.

If fees will be incurred for search time or document reproduction, SELC requests that the fees be waived as authorized by 5 U.S.C. § 552(a)(4)(A)(iii), because public disclosure of the requested information "is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester."

The Forest Service will grant a FOIA fee waiver request if it determines that the disclosure is in the public interest.[2] In deciding whether a fee waiver is in the public interest, the Forest Service considers the following criteria:

(i) The subject of the request, i.e., whether the subject of the requested records concerns "the operations or activities of the government";

---

[2] 7 C.F.R. Part 1, Subpart A, App. A, § 6(a).

(ii) The informative value of the information to be disclosed, i.e., whether the disclosure is "likely to contribute" to an understanding of government operations or activities;

(iii) The contribution to an understanding of the subject by the general public likely to result from disclosure, i.e., whether disclosure of the requested information will contribute to "public understanding";

(iv) The significance of the contribution to public understanding, i.e., whether the disclosure is likely to contribute "significantly" to public understanding of government operations or activities;

(v) The existence and magnitude of a commercial interest, i.e., whether the requester has a commercial interest that would be furthered by the requested disclosure; and,

(vi) The primary interest in disclosure, i.e., whether the magnitude of the identified commercial interest of the requester is sufficiently large, in comparison with the public interest in disclosure, that disclosure is "primarily in the commercial interest of the requester."[3]

All of these factors weigh in favor of the grant of a fee waiver here. First, the requested records "concern 'the operations or activities of the government.'"[4] The Forest Service is a federal government agency, and the requested records concern recent meetings involving Forest Service officials and the Forest Service's initiation of a rulemaking process to revise its NEPA procedures. Such meetings and regulatory efforts are government operations or activities and, because they concern the agency's NEPA implementation—"a key component of its overall environmental analysis and decision-making process"[5]—they relate to a large category of the Forest Service's work and public engagement. The requested information thus satisfies the first fee waiver factor.[6]

Second, the requested records have informative value, as they will illuminate the Forest Service's operations and activities on matters of public significance.[7] The requested information will illuminate, among other things, the information it has relied on in its analysis in drafting the proposed rule. Such records will help the public better understand the Forest Service's positions and concerns about its NEPA implementation, which will allow for more informed public comment on the agency's proposal to reform its NEPA procedures.

---

[3] *Id.* § 6(a)(1).

[4] *Id.* § 6 (a)(1)(i).

[5] 83 Fed. Reg. 302.

[6] *See, e.g.*, *Forest Guardians v. Dep't of Interior*, 416 F.3d 1173, 1178 (10th Cir. 2005) (holding that release of records regarding the scope of BLM's permit program concerns the operations or activities of BLM).

[7] 7 C.F.R. Part 1, Subpart A, App. A, § 6(a)(ii).

Third, disclosure of the requested information is likely to result in greater public understanding on these matters.[8] SELC is an environmental organization that routinely shares information concerning the activities and operations of government agencies, including information concerning the Forest Service, via its website, press releases, public comments, published reports, in-person presentations, interviews with the media, and direct communications with other interested organizations.[9] SELC intends to review and analyze the information provided in response to this request and to share this information and its analysis with its supporters, other interested organizations, members of the press, and the general public at appropriate times through these various media. Given the nature of the information sought, the high level of public interest in national forest projects, and SELC's plan for sharing and publicizing the results of its findings with members of the public, it is likely that disclosure of the requested information will contribute to public understanding.[10]

Fourth, the contribution to public understanding is likely to be significant. The Forest Service's NEPA procedures provide the main process for the public to engage in national forest management, and agency efforts to change those procedures—particularly attempts to reduce public participation—could have major effects nationwide. The Forest Service's notice of proposed rulemaking on revising its NEPA procedures requests comment on all aspects of the proposal. The proposed rule could amount to severe reductions in public participation in national forest management, a matter of major significance to stakeholders throughout the country. Documents or records in the Forest Service's possession that support or relate to these efforts are thus likely to contribute significantly to the public's understanding.

As to the final two factors, SELC has no commercial interest in the disclosure.[11] SELC is a 501(c)(3) nonprofit organization with a public interest mission and no commercial interest in the information. SELC seeks the disclosure solely in the public interest to shed light on the revision of Forest Service NEPA procedures. Although SELC is a legal organization, SELC does not profit, or otherwise have a commercial interest, in document review or litigation. SELC does not charge its clients for attorney time or enter into contingency agreements, nor does it sell or distribute government information for financial gain.

Congress intended federal agencies to be guided by the principle that "fee waivers play a substantial role in the effective use of the FOIA, and they should be *liberally granted* to all

---

[8] *Id.* § 6(a)(iii).

[9] *See, e.g.*, Southern Environmental Law Center, *Atlantic Coast Pipeline Decision Puts National Forests at Risk*, https://www.southernenvironment.org/news-and-press/press-releases/atlantic-coast-pipeline-decision-puts-national-forests-at-risk.

[10] *Cf. Forest Guardians v. Dep't of Interior*, 416 F.3d 1173, 1180 (10th Cir. 2005) (online newsletter, email lists and website help show that requested information is likely to contribute to public understanding); *D.C. Tech. Assistance Org. v. U.S. Dep't of Housing & Urban Dev.*, 85 F. Supp. 2d 46, 49 (D.D.C. 2000) (noting that "technology has made it possible for almost anyone to fulfill th[e] requirement" that requested documents will likely contribute to an understanding of government activities or operations).

[11] 7 C.F.R. Part 1, Subpart A, App. A, § 6(a)(v)-(vi).

requesters other than those who are commercial users."[12] "[T]he presumption should be that requesters in these categories are entitled to fee waivers, especially if the requesters will publish the information or otherwise make it available to the general public."[13] Given this presumption, as well as the strong likelihood that the release of the requested information will significantly contribute to the public's understanding of the activities and operations of the government, the Forest Service should grant SELC any necessary fee waivers.

If you have any questions, please do not hesitate to contact me. I am happy to work with you to clarify the scope of our request and to facilitate the prompt production of the requested public records. Thank you in advance for your assistance.

Sincerely

Sam Evans
National Forests and Parks Program Leader
Southern Environmental Law Center
48 Patton Ave., Suite 304
Asheville, NC  28801
sevans@selcnc.org
(828) 258-2023 (office)

---

[12] 132 Cong. Rec. S14298 (Sept. 30, 1986) (Sen. Leahy) (emphasis added); *Judicial Watch v. Rossotti*, 326 F.3d 1309, 1312 (D.C. Cir. 2003); *McClellan Ecological Seepage Situation v. Carlucci*, 835 F.2d 1282, 1284 (9th Cir. 1987).

[13] *Ettlinger v. FBI*, 596 F. Supp. 867, 873 (D. Mass. 1984) (quoting legislative history).